IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CATHERINE COYNE,
    *Plaintiff*,

       v.

HOLY FAMILY APARTMENTS,
ALLENTOWN ARCHDIOCESE,
RANDY WADSWORTH, KAREN
OHM, SAROSKY HEATING &
AIR CONDITIONING, AND HUD,
    *Defendants*.

:
:
:
:

CIVIL ACTION
NO. 19-4583

**MEMORANDUM**

**Jones, II   J.**                                                        **April 28, 2020**

**I.     Introduction**

Plaintiff Catherine Coyne has filed several federal claims for discrimination, as well as

state law claims for defamation and negligence, against Defendants Holy Family Apartments,

Diocese of Allentown,[1] Randy Wadsworth (Holy Family Director), Karen Ohm (Property

Manager at Holy Family Apartments),[2] Sarosky Heating & Air Conditioning,[3] and the United

States Department of Housing and Urban Development ("HUD") (collectively "Defendants").

Specifically, Plaintiff alleges violations of the Fair Housing Amendments Act[4] ("FHAA") and

---

[1] Although Plaintiff refers to the Diocese of Allentown as the "Archdiocese of Allentown," said
Defendant's Motion to Dismiss clarifies that: "The Diocese is not an archdiocese and should be
referred to as the Diocese of Allentown." (ECF No. 10-1, Brief in Support of Motion to Dismiss
of Defendants, Holy Family Apartments, Allentown Arch Diocese, Randy Wadsworth, and
Karen Ohm, 1 n.2 (hereinafter "Apt. Defs.' Br.").) This Court shall therefore do same.
[2] Hereinafter "Apartment Defendants."
[3] Hereinafter "Defendant Sarosky."
[4] 42 U.S.C. §§ 3601, *et seq.*

Title III of the Americans with Disabilities Act[5] ("ADA") when they failed to move her into a handicap accessible housing unit and make requested repairs. Plaintiff is seeking $2 million for these alleged violations.  (ECF No. 2 at 7.)  Plaintiff further alleges negligence by Defendant Sarosky Heating & Air Conditioning.

In response to Plaintiff's claims, Apartment Defendants have filed a Motion to Dismiss pursuant to Rule 12(b)(6) and Defendant Sarosky moved separately to dismiss, also under Rule 12(b)(6). Plaintiff has responded to both Motions and this matter is now ripe for review. For the reasons set forth herein, Defendants' Motions shall be granted.

## II.    Factual Background

### i.    Assignment to an Inaccessible Unit

Plaintiff is a resident at Defendant Holy Family Apartments in Bethlehem, Pennsylvania. (ECF No.  NO. 2-2 at 2.) [6] Defendant Holy Family Apartments is a mixed-use complex that serves low-income seniors and people with disabilities. (ECF No. 2-2 at 13.) The complex has fifty (50) total units, five (5) of which are fully accessible and designed for use by either seniors or people with disabilities who require handicap accessible living, and forty-five (45) of which are designated for seniors only, meaning residents must be sixty-two (62) years of age or older. (ECF No.  NO. 2-2 at 13.) Prior to the incidents which give rise to Plaintiff's Complaint, Plaintiff lived in a handicap accessible unit. (ECF No.  NO. 2-2 at 13.)

---

[5] 42 U.S.C. §§ 12181, *et seq.*
[6] Citations to the Complaint and the attached exhibits correspond to the ECF page numbering found at ECF No. 2-2, which Plaintiff has titled a "Motion."  Although said Motion sought appointment of counsel, the facts contained therein are incorporated by reference to Plaintiff's "Complaint."  In fact, throughout her form Complaint, Plaintiff responds to all of the questions by directing the court to "See Attached Letter for Motion."  (ECF No. 2.)  Because Plaintiff is proceeding *pro se*, this Court shall rely upon the facts set forth in ECF No. 2-2 for purposes of the instant motions.

Plaintiff alleges that another resident of the apartment complex, "Ms. Gardner," assaulted her on February 8, 2017. (ECF No.  NO. 2-2 at 2.) As a result of the assault, Plaintiff claims she sustained an injury to her rotator cuff, and now suffers from PTSD. (ECF No.  NO. 2-2 at 2.) After the assault, Plaintiff asked Defendant Ohm, the property manager at Defendant Holy Family Apartments, if she could be moved to a unit in another building so that she would no longer have to interact with Ms. Gardner. (ECF No. 2-2 at 9.)  Although there were no available handicap units, Plaintiff agreed to be moved to a unit that was designated for senior use until a handicap unit became free, at which point she would be moved to an accessible unit. (ECF No. 2-2 at 10-11.) Defendant Ohm sought a waiver from Defendant HUD so that Plaintiff could move into a unit that was reserved for seniors. (ECF No. 2-2 at 13.) Defendant HUD approved this waiver and processed the request under the Violence Against Women Act. (ECF No. 2-2 at 13.) On February 23, 2017, Plaintiff signed a document in which she agreed to accept placement in a senior unit until an accessible unit became available, in accordance with the arrangement reached between Defendants Ohm and HUD. (ECF No. 2-2 at 11.)

Plaintiff was then moved to a second-floor unit that was designated for senior use. (ECF No. 2-2 at 2.) This unit had "polished floors" which Plaintiff did not like because they were allegedly slippery, but Defendant Ohm would not agree to replace the floors. (ECF No. 2-2 at 2.) Plaintiff subsequently slipped and fell on the kitchen floor and fractured her right foot. (ECF No. 2-2 at 2.) Plaintiff claims her broken foot, coupled with the apartment's second-floor location, caused her to struggle in the unit, as she had to balance to go up seventeen steps. (ECF No. 2-2 at 2.) Defendant Holy Family replaced the apartment floors approximately five months after Plaintiff moved in to the unit, but after she broke her foot. (ECF No. 2-2 at 2.)

On June 1, 2018, a first-floor apartment became available,[7] and Plaintiff "sent a letter to management reminding them as per the agreement, [she] was to be moved when a first floor, one-bedroom apartment became available."[8] (ECF No. 2-2 at 2.) This apartment was instead given to a disabled man. (ECF No. 2-2 at 2.) On June 19, 2018, Defendant Ohm informed Plaintiff that her boss, Defendant Wadsworth, the Director of Defendant Holy Family Apartments, was not going to move Plaintiff until she was sixty-two (62) years old. (ECF No. 2-2 at 3.)

In August 2018, Plaintiff was offered a first-floor unit in her old building; she refused the apartment because Ms. Gardner, who assaulted her, still lived there. (ECF No. 2-2 at 3.) In April 2019, Plaintiff's neighbor was allegedly offered a first floor one-bedroom unit but informed Defendant Ohm that Plaintiff was "first on the list" for the unit, to which Defendant Ohm replied Plaintiff was ineligible because she was not yet sixty-two (62) years old. (ECF No. 2-2 at 3.) Plaintiff further claims another tenant, who was not disabled, was moved to a first-floor unit at the beginning of the summer of 2019. (ECF No. 2-2 at 3.)

As a result of Defendants Ohm, Wadsworth and Holy Family Apartments' actions, Plaintiff alleges she suffered a broken foot, PTSD, and she has "had some issue with [her] eyes due to the stress of [Defendants'] abuse." (ECF No. 2-2 at 4.)

---

[7] The Complaint does not make clear whether this unit was a designated handicap unit, or whether it was a senior unit.

[8] As per the documents attached to the Complaint, the agreement actually stated that Plaintiff was to be moved "to a *handicap unit* should one become available in a building other than the one where the tenant was harassing and physical to [her]." (ECF No. 2-2 at 11 (emphasis added).) The agreement *did not* state that Plaintiff would be moved whenever any first floor, one-bedroom apartment became available.

###### ii.     Furnace

In addition to the foregoing, Plaintiff alleges she also had issues with her unit's heating system, as the furnace was "putting out 60% $CO_2$ according to Sarosky Heating and Air Conditioning[.]"[9] (ECF No. 2-2 at 3.) Defendant Sarosky Heating & Air Conditioning told Plaintiff to keep her windows open to address the excess carbon monoxide, and to stop by their office for a copy of "the report." (ECF No. 2-2 at 3.) When she did so, Plaintiff was allegedly told her unit's furnace had the highest carbon monoxide output of any furnace at Defendant Holy Family Apartments. (ECF No. 2-2 at 3.) In October 2018, Defendant Wadsworth informed Plaintiff that Defendant Holy Family Apartments would not replace her furnace. (ECF No. 2-2 at 3.) As a result of the furnace producing excess carbon monoxide, Plaintiff claims she has experienced "an increase in respiratory issues over the last year." (ECF No. 2-2 at 4.)

###### iii.     Lack of Accessible Parking & Doorbell

Plaintiff further alleges that she has been denied the use of a handicapped parking spot, as there is "[n]o disabled parking spot in front of [her] building." (ECF No. 2-2 at 4.)  Plaintiff claims she has "to walk to the end of the building" where her assigned parking spot is, which is a non-disabled spot. (ECF No. 2-2 at 4.) Finally, Plaintiff claims she is hard of hearing and alleges that although Defendant Holy Family Apartments is aware of the fact that she can't hear the doorbell, said Defendant has not fixed the doorbell. (ECF No. 2-2 at 4.)

---

[9] Plaintiff's Complaint refers to $CO_2$, the chemical formula for carbon dioxide.  However, this Court shall infer that Plaintiff intended to refer to CO, or carbon monoxide, which is produced by furnaces and can lead to poisonings.

### III.    Standard of Review

When reviewing a Rule 12(b)(6) motion, district courts must first separate legal conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be discarded, and well-pled facts given the deference of truth. *Id*. at 210-211. Courts must then determine whether the well-pleaded facts state a "plausible claim for relief." *Id*. at 211.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231).

Regardless of how "inartfully pled" a *pro se* complaint is, a court must liberally construe such complaints and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520—521 (1972)). *Pro se* claims may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McDowell v. Del. State Police*, 88 F.3d 188, 189 (3d Cir. 1996) (quoting *Haines*, 404 U.S. at 520) (internal quotations omitted)). Despite the court having to liberally construe a *pro se* complaint, the complaint must still satisfy the plausibility standard derived from *Twombly* and *Iqbal*. *Alja-Iz v. U.S. V.I. Dept. of Educ.*, 626 F. App'x. 44, 46 (3d Cir. 2015) (citing *Fantone*, 780 F.3d at 193)).

When considering a motion to dismiss under Rule 12(b)(6), a court must take three steps to determine the sufficiency of the Complaint. Namely, it must: (1) identify the elements a party must plead to state a claim; (2) determine whether the allegations are no more than conclusions and are thus not entitled to the assumption of truth; and (3) assume the veracity of well-pled factual allegations and determine if they "plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d, 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). At this stage of the litigation, a court must only determine whether the non-movant has sufficiently pled its claims, not whether it can prove them. *Fowler*, 578 F.3d at 213.

Under Federal Rule of Civil Procedure 8(a), "pleadings are to be liberally construed, and a pleading which gives notice to the defendant of the allegations made against him and the grounds upon which they are based is generally sufficient." *Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 U.S. Dist. LEXIS 90620, at *7 (E.D. Pa. July 13, 2016) (citations omitted). To that end, It is incumbent upon a plaintiff to plead with clarity. "Neither the Court nor the Defendants should be forced to speculate which events and theories of liability give rise to [a given count] . . . Certainly, neither the Court nor the Defendant should be required to sift through all of Plaintiff's previously stated allegations in order to piece together a claim." *Danielson v. Chester Twp.*, Civil Action No. 13-5427, 2013 U.S. Dist. LEXIS 164271, at *24 (D.N.J. Nov. 19, 2013) (*citing Iqbal*, 556 U.S. at 678). To that end, "there is no question that each count of a properly pled complaint must contain its own cause of action and those particular factual allegations that would allow the Court to draw the reasonable inference that the defendant is liable for that cause of action." *Id.* "Rule 8(a) requires that a complaint 'be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim." *Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012)

(quoting *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)). *See also, Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 U.S. Dist. LEXIS 21499, at *4-5 (E.D. Pa. Oct. 25, 2004) ("'Rule 8(a) requires parties to make their pleadings straight forward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'") (quoting *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

In the case of multi-defendant litigation, a Complaint that lacks "specific allegations tying the individual defendants to the alleged [wrongful] conduct[] cannot show the necessary personal involvement or meet the notice pleading standards of Federal Rule of Civil Procedure 8(a)." *Park v. Temple Univ.*, 757 F. App'x 102, 109 (3d Cir. 2018) (citations and internal quotation marks omitted). Thus, "even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants[,] [and] [a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim." *Binder*, 2016 U.S. Dist. LEXIS 90620, at *7 (citations omitted).

## IV.    Discussion

In view of the foregoing standards, the court concludes that Plaintiff's Complaint is lacking any specific allegations of wrongful behavior against Defendant Diocese of Allentown. Beyond the fact that its name appears in the Complaint's case caption, no further reference is made to this Defendant. Thus, to the extent Plaintiff intended to bring any claims against Defendant Diocese of Allentown, all such claims are dismissed against the Diocese.

### A.      Federal Claims

### i.      FHAA Claims

### a.      Age

Although it is unclear as stated, Plaintiff appears to be asserting both age discrimination and disability discrimination claims arising under the FHAA against Defendants Holy Family Apartments, Ohm, and Wadsworth.

The FHAA provides in pertinent part that it is unlawful . . .

> To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. . . . [or] [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604 (a)-(b).

Age is not a protected class under the FHAA and is therefore not actionable under the FHAA. Accordingly, to the extent Plaintiff intended to bring a FHAA claim for age discrimination, said claim must be dismissed.

### b.      Disability

With respect to Plaintiff's disability discrimination claim, "[u]nder the FHAA, which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful" to discriminate in housing on the basis of disability. *Cmty. Servs., Inc. v Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citing 42 U.S.C. § 3604 (f)(2)).[10] Specifically, it is

---

[10] Up until 1988, this Act was referred to as the "Fair Housing Act."  In 1988, amendments were promulgated (including the addition of handicap as a basis for discrimination) and the Act became known as the "Fair Housing Amendments Act of 1988."  42 U.S.C. § 3601 note (1988) (Short Titles).

illegal to discriminate in the rental, or to otherwise make unavailable or deny a dwelling to a renter because of her handicap, or to discriminate against her "in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of [the renter's] handicap." 42 U.S.C. § 3604 (f)(1)-(2). Discrimination also includes refusing "to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises[,]" and refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604 (f)(3)(A)-(B).

As a preliminary matter, this Court must address the fact that Plaintiff has sued Defendants Ohm and Wadsworth in their individual capacities.   Said Defendants argue that Plaintiff cannot bring a claim against them in their individual capacities because Plaintiff "has not alleged any facts suggesting that either Ms. Ohm or Mr. Wadsworth had the capacity or authority to discriminate against her in the rental of housing." (Apt. Defs.' Br.  9.) In support of their position, Defendants Ohm and Wadsworth rely on *Taylor v. Messmer*, a case out of the Western District of Pennsylvania in which the court held that "[i]n order to be liable for discrimination under the FHAA, a person must have the capacity and/or authority to discriminate in the sale or rental of housing." No. 02:09-cv-1116, 2010 U.S. Dist. LEXIS 11003, at *30 (W.D. Pa. Feb. 9, 2010) (citing *Michigan Protection and Advocacy Svc., Inc. v. Babin*, 799 F. Supp. 695, 712 (E.D. Mich. 1992)). Thus, under *Taylor*, when a plaintiff's claim relates only to "alleged conduct undertaken by [defendants] in their capacity as . . . officers" of a housing

company, such claims can only be brought against the defendants in their official capacities. *Id.* at *31.

This Court finds that nothing in the Fair Housing Act prohibits a defendant from being sued in his or her individual capacity. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) (applying traditional principles of agency and vicarious liability law to claims of individual liability for discrimination under the FHAA) (citing 42 U.S.C. § 3605(a), 42 U.S.C. § 3602(d)); *see also Bischoff v. Brittain*, No. 2:14-cv-01970, 2016 U.S. Dist. LEXIS 126685, at *33 (E.D. Ca. Sept. 16, 2016) ("Individual employees can be held liable for their own unlawful conduct under the FHA. The language of § 3604 broadly makes it unlawful 'to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith,' without limiting which persons or entities may be held liable.") (citing 42 U.S.C. § 3604(b); *Meyer v. Holley*, 537 U.S. 280, 285 (2003)); *Hous. Opportunities Project For Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1014 (S.D. Fla. 2007) ("[A]n excuse offered by an employee that she was acting at the behest of her employer does not absolve her from the illegal actions she took nor does it preclude her from liability.").

In view of the foregoing, this Court can find no support for the *Taylor* court's holding that under the FHAA, individual defendants cannot be sued for engaging in discriminatory housing practices. Instead, the majority of cases to address the issue support a finding that defendants *can* be sued in their individual capacities.

However, while Plaintiff may presumably bring such a claim, she has failed to properly do so here, for her FHAA claim does not meet the pleading standards set forth in *Twombly* and

*Iqbal* against *any* Defendants. Thus, this Court shall dismiss Plaintiff's FHAA claim against all moving Defendants for the reasons that follow.

Plaintiffs alleging disability discrimination under the FHAA may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment); (2) disparate impact claims; and (3) claims alleging a defendant refused to make reasonable accommodations. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d at 176. "To evaluate these claims under the FHAA, courts . . . typically adopt[] the analytical framework of their analogues in employment law, including their coordinate burden-shifting analyses once [the] plaintiff has made a prima facie showing of discrimination under a specific claim." *Id.*

In this case, Plaintiff alleges Apartment Defendants discriminated against her on the basis of disability by: refusing to replace the polished floors in her unit and fix her furnace; assigning her to a second-floor unit, rather than a regular (*i.e.* not handicap accessible) unit on the first floor; and, refusing to move her to a first-floor unit when such units became available.[11]

It is unclear under which theory of discrimination Plaintiff seeks to bring a claim.  In the event Plaintiff intended to bring suit under the intentional discrimination or disparate impact theories, her Complaint fails on its face. This is so because a plaintiff alleging intentional discrimination is "required to show that a protected characteristic played a role in the defendant's decision to treat her differently." *Id.* at 177 (citations and internal quotation marks omitted). In other words, in order to state a claim for intentional discrimination, Plaintiff would have to show

---

[11] These allegations are more generally described in Plaintiff's Complaint as follows: "1) Fail or delay performance of maintenance or repairs 2) Harass a person (yes, Randal Wadsworth has indeed harassed me) 3) Assign a person to a particular building or section of a building or neighborhood 4) Limit privileges, services or facilities of a dwelling 5) otherwise make housing unavailable." (ECF No. 2-2 at 3.)

that Defendants refused to: honor her requests for a specific apartment; replace the polished floors; and, repair the furnace *because she was disabled*. *Id.* at 178 ("[T]he most fundamental element of the claim is that plaintiff must demonstrate that defendant's alleged discrimination was 'because of a handicap.'"). Plaintiff has not so alleged and thus, cannot sustain a claim under a theory of intentional discrimination.

The same holds true for a claim under the theory of disparate impact. In order to plausibly state a claim of disparate impact under the FHAA, a plaintiff must allege facts to "show the [Defendant's action had a greater adverse impact on the protected group (in this case the elderly handicapped) than on others." *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 466-67 (3d Cir. 2002). To the extent Plaintiff might be alleging that Apartment Defendants' refusal to honor her requests had a disparate impact on her as a handicapped person, she has failed to state a claim, for the facts she has put forth pertain only to *her* specific housing situation. *Spieth v. Bucks County Hous. Auth.*, 594 F. Supp. 2d 584, 593 (E.D. Pa. 2009) ("[N]othing in [the plaintiff]'s complaint suggests that she is bringing a disparate impact claim because she alleges facts specific only to her situation.").

Plaintiff's FHAA claim clearly aligns with a theory of discrimination for failure to accommodate, yet as averred, it fails to plausibly state such a claim. In order to state a claim under the FHAA for a failure to accommodate, a plaintiff must show "the [reasonable] accommodations that [she] requested are 'necessary to afford [handicapped] persons an equal opportunity to use and enjoy a dwelling.'" *Lapid-Laurel*, 284 F.3d at 459 (quoting 42 U.S.C. § 3604(f)(3)(B)). "To survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B) [of the FHAA]: refusal, reasonable accommodation, and necessity/equal opportunity." *Vorchheimer v. Philadelphian*

*Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018). The element of necessity "requires that an accommodation be essential, not just preferable." *Id.* at 107.

Plaintiff has failed to plead facts to demonstrate that the accommodations she sought were necessary, for she failed to first show this Court what her needs are because of her specific disabilities. *Id.* at 108 (noting that "[o]nce [the court] identif[ies] the particular tenant's need, [it] can gauge what is necessary to afford that tenant equal housing opportunity."); *see also Lapid-Laurel*, 248 F.3d at 460 ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be necessary.").

First, Plaintiff has not provided this Court with any facts to show she required an earlier replacement of the polished floors in order to have an equal opportunity to use and enjoy her second-floor apartment. To that end, she has failed to plead facts which show that, because of a handicap, she required a different type of flooring to be able to safely live in her apartment.

Second, Plaintiff has not averred any facts that demonstrate *why*, because of a handicap, she required an apartment on the first floor. While Plaintiff alleges she suffers from cancer and a bleeding disorder (Von Willebrand Disease (ECF No. 2-2 at 4, 7)) in support of this claim, she failed to plead facts which show how these conditions make it difficult for her to go up and down stairs. Instead, she conclusively states that as a disabled person, she "can live in a regular apartment . . . but it must be on the first floor." (ECF No. 2-2 at 2.)  However, because Plaintiff must make a showing that the accommodation she sought was "necessary" to prevent her from suffering unequal treatment on the basis of her handicap, and her Complaint fails to do so as stated, Plaintiff's FHAA claim must be dismissed.  *See* 42 U.S.C. § 3604(f)(3)(B) (noting that unlawful discrimination under the FHAA exists only when the accommodation at issue is "necessary to afford such person equal opportunity to use and enjoy a dwelling."); *see also*

*Vorchheimer*, 903 F.3d at 107-108 ("Think of . . . the paraplegic granted special permission to live on a first-floor apartment because he cannot climb the stairs. . . . The paraplegic's need is a way to get to his apartment. Once we identify the particular tenant's need, we can gauge what is necessary to afford that tenant equal housing opportunity.") (citations and internal quotation marks omitted).[12]

With respect to Plaintiff's allegations regarding Defendant Holy Family's failure to repair her furnace, this Court can find no nexus between her alleged disabilities and the request for repair. Plaintiff notes that carbon monoxide is a "silent killer."  (ECF No. 2-2 at 3.)  However,

---

[12] To the extent Plaintiff might have intended to claim that her broken foot was a handicap that required the accommodation of a first-floor apartment (ECF No. 2-2 at 2), her claim must still be dismissed. Under the FHAA, a person is considered handicapped if she has "(1) a physical or mental impairment which substantially limits one or more of [her] major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). The definition of "handicap" in the FHAA is virtually identical to the ADA's definition of disability, *and thus they are used interchangeably. Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 324 (E.D. Pa. 2001) (citation omitted) (emphasis added); *see also Solivan v. Valley Hous. Dev. Corp.,* CIVIL ACTION NO. 08-2722, 2009 U.S. Dist. LEXIS 104355, at *17, 2009 WL 3763920 (E.D. Pa. Nov. 9, 2009) ("To determine whether Defendant failed to reasonably accommodate Plaintiff under the FHA, RA and ADA, the Court must consider: 1) whether Plaintiff's requested accommodation/modification was necessary to afford her an equal opportunity to use and enjoy the dwelling; and 2) whether Plaintiff's requested accommodation was reasonable, or whether it imposed an undue hardship on Defendant.").  Again, Plaintiff's allegations fail to meet this standard.

Under the ADA, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002); *see also Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 362 (3d Cir. 2000) (holding that "only extremely limiting disabilities—in either the short or long-term—qualify for protected status under the ADA."). "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities[.]" *Bolden v. Magee Women's Hosp. of University of Pittsburgh Medical Center*, 281 F. App'x 88, 90 (3d Cir. 2008). Thus, "[i]ntermittent, episodic impairments are not disabilities, the standard example being a broken leg." *McDonald v. Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995). Therefore, in this case, Plaintiff's broken foot is deemed a temporary condition that does not meet the definition of a handicap under the FHAA, and Defendants' failure to provide a reasonable accommodation for it would not constitute discrimination.

this statement applies to everyone, regardless of disability.  All people, whether able-bodied or disabled, are at risk from excess carbon monoxide.

This Court shall therefore dismiss Plaintiff's FHAA claim for discrimination on the basis of handicap, for she has failed to allege facts to plausibly demonstrate what her needs were as a result of a handicap as defined by the FHAA, and has therefore failed to meet the pleading standards of *Twombly* and *Iqbal* for her FHAA claim.[13] *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231) ("A complaint has to 'show' . . . an entitlement [to relief] with its facts.").

### ii.   ADA Claims

Plaintiff herein brings a discrimination claim under the ADA against Defendant Holy Family Apartments.  (ECF No. 2-2 at 3-4.)[14]   Namely, Plaintiff alleges "there are the issues regarding ADA violations" and alleges there is no disabled parking spot in front of her building and that Defendant Holy Family Apartments assigned her a regular parking spot; and, she cannot hear her doorbell because she is hearing impaired, and Defendant Holy Family Apartments has chosen not to fix it. (ECF No. 2-2 at 3-4.)

---

[13] In her Response Brief, Plaintiff attempts to bring these same discrimination claims under the ADA. (ECF No. 14 at 3.) However, she may not do so, as this Court may only consider claims that were presented in the Complaint. *Chartener v. Provident Mut. Life Ins. Co.*, No. 02-8045, 2004 U.S. Dist. LEXIS 8954, at *15-16 (E.D. Pa. May 13, 2004) ("As this is a Motion to Dismiss, the Court can only consider the claims raised in the Complaint and not claims that are raised solely in the briefing on the motion.").

[14] In their Brief, Defendants Ohm and Wadsworth argue that to the extent Plaintiff's ADA claims can be construed as against them, the claims must be dismissed because there is no individual liability under Title III of the ADA. (Apt. Defs.' Br. 8.) Defendants are correct. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (extending a finding that there is no individual liability under Titles I and II of the ADA to Title III because the ADA "addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations.").  However, this Court does not read Plaintiff's Complaint as asserting ADA claims against Defendants Ohm and Wadsworth, but instead against Defendant Holy Family Apartments only.

The specific provision of the ADA under which Plaintiff brings her claims provides as follows:

> Title III states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]"  It reflects the ADA's "comprehensive character," and defines "public accommodation" to include, in relevant part: a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment[.]

*Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 176 (3d Cir. 2019) (internal citations omitted).

Utilizing this standard, the court shall address each of Plaintiff's ADA claims in turn.

### a.    Parking

The parking lot of an apartment building *may* be considered a place of public accommodation under Title III of the ADA *if* it serves the general public. *See Phillips v. Perkiomen Crossing Homeowners Assoc.*, No. 95-CV-1535, 1995 U.S. Dist. LEXIS 14375, at *3-4 (E.D. Pa. Oct. 2, 1995) ("Sections 12181 *et seq.* require certain private entities to make their facilities amenable to individuals with disabilities. However, these entities are limited to 'commercial facilities,' defined as 'facilities—(A) that are intended for nonresidential use;['] . . . Plaintiff's complaint indicates that the facility in question is a private parking lot for residents of the Perkiomen Crossing housing development. . . . [and thus] the Americans with Disabilities Act does not apply to the facts as presented by the plaintiff[.]") (citation omitted); *see also Section 504: Frequently Asked Questions*, DEP'T OF HOUS. AND URBAN DEV., https://www.hud.gov/program_offices/fair_housing_equal_opp/disabilities/sect504faq ("Title III of the ADA covers public and common use areas at housing developments when these public areas are, by their nature, open to the general public or when they are made available to

the general public or residents of developments. . . . However, if [areas of common use are] . . . only open to residents of the building, Title III would not apply.").

As stated, Plaintiff's allegations are insufficient and do not permit this Court to ascertain if the parking lot was open to the general public and thus subject to Title III.[15]

However, assuming *arguendo* the ADA applies, Plaintiff has failed to state a claim. Title III provides that no person with a disability "shall be discriminated against on the basis of [that] disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes the failure . . .

> [T]o make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(ii).

A failure to provide a handicapped tenant with an assigned parking spot that is near her apartment might represent a failure to make a reasonable modification to an established policy or practice surrounding parking. However, much like her FHAA claims, Plaintiff has not pleaded facts which show she required a parking spot near her building because of how she was impacted by a specific handicap. Furthermore, as Defendants note in their Motion to Dismiss, Plaintiff failed to allege that she has a handicap placard that would entitle her to park in spot designated for the disabled.  (Apt. Defs.' Br. 12 n.15.) Nevertheless, this Court shall dismiss Plaintiff's

---

[15] In her Response Brief, Plaintiff notes that she had been made to park in a spot designated for visitors. (Pl.'s Resp. Br. to Apt. Defs.' Mot. Dismiss. 3.) Again, this Court is prohibited from considering facts that only appear in Plaintiff's Response to the instant motions. *See supra* n.13.

ADA claim regarding parking because as stated, it fails to show that the parking lot is covered by Title III of the ADA, and because it fails to allege facts which plausibly demonstrate an entitlement to relief.[16]

### b. Doorbell

Plaintiff further avers she is hearing impaired, cannot hear her doorbell, and that Defendant Holy Family Apartments is aware of the issue but "chose not to fix it." (ECF No. 2-2 at 4.) Said claim must be dismissed because "[r]esidential facilities are not covered by the ADA." *Mahdi Sufi El v. People's Emergency Ctr.*, No. 19-690, 2020 U.S. Dist. LEXIS 20089, at *14 (E.D. Pa. Feb. 6, 2020); *see also Regent's of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) ("We agree that residential facilities such as apartments and condominiums are not transient lodging and, therefore, not subject to ADA compliance.").

### iii. Civil Rights Violations

In addition to raising discrimination claims under the FHAA and ADA, Plaintiff summarily cites violations of her civil rights under "the Civil Rights Act, and other state and federal statutes," and seems to suggest she has suffered physical and mental abuse which constitutes an actionable civil rights claim. (ECF No. 2-2 at 5.) Aside from the fact that Plaintiff

---

[16] In addition, Plaintiff's Complaint seeks monetary damages in the amount of $2,000,000; she is not seeking injunctive relief. (ECF No. 2 at 7.) "[U]nder Title III of the ADA, monetary damages are not an available remedy to private plaintiffs and therefore only prospective injunctive relief is possible." *Harty v. Grand-Sasso, Inc.*, No. 18-CV-5474, 2019 U.S. Dist. LEXIS 96546, at *9 (E.D. Pa. June 7, 2019). "Accordingly, in order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that [s]he would again be the victim of the allegedly [illegal] practice." *Id.* (internal quotation marks and citations omitted). Plaintiff was moved to a new apartment in November 2019, and her Response Brief suggests she was assigned a parking spot directly in front of her building (*See* Pl.'s Resp. Br. to Apt. Defs.' Mot. Dismiss 3). Therefore, it appears Plaintiff lacks standing to pursue this claim.

fails to identify exactly which "Civil Rights Act" under which she seeks relief, she similarly fails to articulate any facts or circumstances in relation to the requirements of any said "Act." Consequently, all claims brought pursuant to "the Civil Rights Act" shall be dismissed.

**B.      State Law Claims**

Inasmuch as Plaintiff shall be afforded an opportunity to amend her federal claims, this Court will proceed to address the sufficiency of her state law claims at this time.

**i.      Negligence Claim Against Defendant Sarosky Heating & Air Conditioning**

While it is not entirely clear to this Court what type of claim Plaintiff is attempting to bring against Defendant Sarosky Heating & Air Conditioning, it appears she might intend to bring a state law claim for negligence. Plaintiff avers that her furnace was "putting out 60% $CO_2$[.]"[17] (ECF No. 2-2 at 3.) Plaintiff states Defendant Sarosky Heating & Air Conditioning told her that her unit's furnace had the highest carbon monoxide output of any at Defendant Holy Family Apartments, but Defendant Holy Family Apartments would not replace it. (ECF No. 2-2 at 3-4.) Plaintiff asserts that "[t]his [wa]s dangerously negligent and a violation under the Fair Housing Act[,]" and as a result, she has experienced "an increase in respiratory issues over the last year." (ECF No. 2-2 at 3-4.) In response, Defendant Sarosky Heating & Air Conditioning argues Plaintiff "has failed to plead any facts or legal basis for an assertion of a claim of negligence against Sarosky Heating & Air Conditioning." (ECF No. 13-2, Def. Sarosky Br. 7.) This Court agrees.

---

[17] As previously explained, Plaintiff's Complaint refers to $CO_2$, the chemical formula for carbon dioxide, however this Court believes Plaintiff is actually referring to CO, or carbon monoxide, which is produced by furnaces and can lead to poisonings.

As Defendant Sarosky Heating & Air Conditioning notes, Plaintiff did not identify "any independent duty or obligation of moving defendant Sarosky to undertake any repairs or that any negligent act or omission of moving defendant [caused] her furnace to emit excessive carbon monoxide[,]" and thus her claim cannot be maintained as stated. (Def. Sarosky Br. 7.) "In order to state a negligence claim under Pennsylvania law, a plaintiff must allege (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damages." *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 817 (E.D. Pa. 2016) (citing *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002)).

Plaintiff has not pled facts that establish duty, breach, proximate cause, or damages. Reading the Complaint in the light most favorable to Plaintiff, this Court finds she stated facts to establish the element of injury ("increased respiratory issues").  However, this alone does not suffice to maintain her claim. This Court shall therefore dismiss the negligence claim against Defendant Sarosky Heating & Air Conditioning.

To the extent Plaintiff was trying to bring a FHAA claim against Defendant Sarosky Heating & Air Conditioning, that too is dismissed. As said Defendant correctly noted, there is no factual or legal basis for bringing such a claim against this party. (Def. Sarosky Br. 7.)

### ii. Negligence Claims Against Defendants Holy Family Apartments, Karen Ohm, and Randal Wadsworth

Plaintiff appears to raise two separate claims for negligence against Defendant Holy Family Apartments. First, she asserts that Defendants Holy Family Apartments and Ohm were negligent when they failed to replace the "polished floors" in her apartment, which resulted in her falling and breaking her foot. (ECF No. 2-2 at 2.) Second, Plaintiff maintains that Defendants Holy Family Apartments and Wadsworth refused to replace her furnace, which was producing

21

dangerous levels of carbon monoxide, and in turn, caused her to suffer from respiratory issues. (ECF No. 2-2 at 3-4.) Just as with her claim against Defendant Sarosky Heating & Air Conditioning, Plaintiff has again failed to plead facts that establish the elements of negligence: duty, breach, proximate cause between breach and injury, and damages. For this reason, this Court shall dismiss all negligence claims against Defendants Ohm, Wadsworth, and Holy Family Apartments.

### iii.    Defamation

Plaintiff appears to assert a state law claim for defamation. Plaintiff alleges she has been "harassed, stalked, assaulted, defamed, victim shamed, and EGREGIOUSLY ABUSED." (ECF No. 2-2 at 4) (emphasis in original). To the extent the Complaint can be construed as raising defamation claims against any Defendants, such claims are dismissed for failure to state a claim.

First, Plaintiff has failed to indicate to which Defendants these allegations of defamation pertain, and this is fatal to the claim. *Binder*, 2016 U.S. Dist. LEXIS 90620, at *7 (citations omitted) ("[E]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants[,] [and] [a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim."). Second, her Complaint is devoid of any specific factual allegations that could meet the elements of a defamation claim.[18] *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 167 (3d Cir. 2014) (citing 42 Pa. Cons. Stat. § 8343(a)) ("To state a claim for defamation, a plaintiff must

---

[18] Plaintiff provides further details about the alleged defamation in her Response Brief, noting that Defendants Holy Family Apartments and Wadsworth are the responsible parties, and gives a description of their allegedly defamatory actions. However, in order to withstand a Motion to Dismiss, any such allegations must have been put forth in the pleading itself, and not in a Response Brief. *See supra* n. 13. Notwithstanding, the factual allegations raised in Plaintiff's Response Brief nevertheless fail to meet the elements of a defamation claim.

plead: (1) the defamatory nature of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) the recipient's understanding of the statement's defamatory meaning; (5) the recipient's understanding that the statement applied to the plaintiff; (6) special harm to the plaintiff through the statement's publication; and (7) abuse of a conditional privilege."). For these reasons, Plaintiff's defamation claim is dismissed as to all moving Defendants.

### C.      Leave to Amend

Amendments to a Complaint may be made if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Plaintiff does not meet any of the above requirements for amendment, and therefore may only amend her Complaint by leave of court or with the written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id.* However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the court applies the legal standards of Rule 12(b)(6). *Id.*

This Court remains mindful of Plaintiff's *pro se* status.  Because the court cannot definitively conclude that amendment of Plaintiff's FHAA, negligence, and defamation claims against Apartment Defendants would be futile, Plaintiff shall be granted leave to amend same. However, leave to amend her ADA and Civil Rights Act claims shall not be granted, as this Court finds amendment would be futile.  *See Pavalone v. Pres. Mgmt.,* CIVIL ACTION NO. 3:18-00191, 2019 U.S. Dist. LEXIS 4101, at *17 (M.D. Pa. Jan. 8, 2019) (finding ADA claim to

be "legally frivolous" because it was "exclusively concerned with conduct by the owner-operator and property manager of an apartment complex where one of the plaintiffs was a permanent resident [and] 'For purposes of Title III, "apartments and condominiums do not constitute public accommodations," even where the property accepts tenants receiving federal housing subsidies.'") (quoting *El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 844 (E.D. Pa. 2018)). Moreover, inasmuch as any amendment pertaining to Defendant Sarosky would be futile, Plaintiff shall not be afforded leave to amend said claim(s).

This Court reminds Plaintiff that when preparing her Amended Complaint, it is incumbent upon her to plead with clarity. To that end, Plaintiff is directed to fashion her Amended Complaint in accordance with the Rule 8 standard set forth hereinabove.

**IV.     Conclusion**

For the foregoing reasons, Defendants Holy Family Apartments, Diocese of Allentown, Randy Wadsworth, and Karen Ohm's Motions to Dismiss shall be granted.  Plaintiff shall be afforded leave to amend her claims against all Apartment Defendants, except the Diocese of Allentown, against whom she has alleged no facts.  The Diocese shall be dismissed as a named defendant in this matter.  Additionally, Defendant Sarosky's Motion shall be granted and Plaintiff's claim(s) against said Defendant shall be dismissed with prejudice, as, again, Plaintiff has not alleged any facts or cognizable claims against said party.   Plaintiff is granted leave to file an Amended Complaint against the remaining Apartment Defendants, in accordance with this Court's discussion above.

An appropriate Order follows.


BY THE COURT:


/s/  C. Darnell Jones, II   J.