IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE COYNE<br>    *Plaintiff*, | : | |
| v. | : | |
| HOLY FAMILY APARTMENTS;<br>RANDY WADSWORTH; KAREN OHM;<br>and, HUD<br>    *Defendants*. | :<br><br>: | CIVIL ACTION<br>NO. 19-4583 |

**MEMORANDUM**

**Jones, II   J.**                                                                                                                              **July 13, 2021**

**I.   Introduction**

Presently before the court is *pro se* Plaintiff Catherine Coyne's Motion for Leave to File an Amended Complaint for Elder Abuse, and Defendants Holy Family Apartments, Karen Ohm and Randy Wadsworth's Motion to Dismiss.  For the reasons that follow, Plaintiff's Motion shall be denied and Defendants' Motion shall be granted.

**II.   Background**

   **a.  Facts**[1]

At the time Plaintiff filed her initial Complaint, she was a resident at Defendant Holy Family Apartments in Bethlehem, Pennsylvania. (ECF No. NO. 2-2 at 2.) Defendant Holy Family Apartments is a mixed-use complex that serves low-income seniors and people with disabilities. (ECF No. 2-2 at 13.) The complex has fifty (50) total units, five (5) of which are fully accessible and designed for use by either seniors or people with disabilities who require

---

[1] Citations to the Complaint and the attached exhibits correspond to the ECF page numbering found at ECF No. 2-2 (facts provided by Plaintiff in original Complaint) and ECF No. 28 (facts provided by Plaintiff in her support of her Motion for Leave to Amend).  The facts contained in ECF No. 2-2 were incorporated by reference into Plaintiff's form Complaint (ECF No. 2).

1

handicap accessible living, and forty-five (45) of which are designated for seniors only, meaning residents must be sixty-two (62) years of age or older. (ECF No. 2-2 at 13.) Prior to the incidents which gave rise to Plaintiff's Complaint, she lived in a handicap accessible unit. (ECF No. 2-2 at 13.) Plaintiff alleges that another resident of the apartment complex, "Ms. Gardner," assaulted her on February 8, 2017. (ECF No. NO. 2-2 at 2.) As a result of the assault, Plaintiff claims she sustained an injury to her rotator cuff, and now suffers from PTSD. (ECF No. NO. 2-2 at 2.) After the assault, Plaintiff asked Defendant Ohm, the property manager at Defendant Holy Family Apartments, if she could be moved to a unit in another building so that she would no longer have to interact with Ms. Gardner. (ECF No. 2-2 at 9.) Although there were no available handicap units, Plaintiff agreed to be moved to a unit that was designated for senior use until a handicap unit became free, at which point she would be moved to an accessible unit. (ECF No. 2-2 at 10-11.) Defendant Ohm sought a waiver from Defendant HUD so that Plaintiff could move into a unit that was reserved for seniors. (ECF No. 2-2 at 13.) Defendant HUD approved this waiver and processed the request under the Violence Against Women Act. (ECF No. 2-2 at 13.) On February 23, 2017, Plaintiff signed a document in which she agreed to accept placement in a senior unit until an accessible unit became available, in accordance with the arrangement reached between Defendants Ohm and HUD. (ECF No. 2-2 at 11.) Plaintiff was then moved to a second-floor unit that was designated for senior use. (ECF No. 2-2 at 2.) This unit had "polished floors" which Plaintiff did not like because they were allegedly slippery, but Defendant Ohm would not agree to replace the floors. (ECF No. 2-2 at 2.) Plaintiff subsequently slipped and fell on the kitchen floor and fractured her right foot. (ECF No. 2-2 at 2.) Plaintiff claims her broken foot, coupled with the apartment's second-floor location, caused her to struggle in the unit, as she had to balance to go up seventeen steps. (ECF No. 2-2 at 2.) Defendant Holy Family replaced the

apartment floors approximately five months after Plaintiff moved into the unit, but after she broke her foot. (ECF No. 2-2 at 2.) On June 1, 2018, a first-floor apartment became available,[2] and Plaintiff "sent a letter to management reminding them as per the agreement, [she] was to be moved when a first floor, one-bedroom apartment became available."[3] (ECF No. 2-2 at 2.) This apartment was instead given to a disabled man. (ECF No. 2-2 at 2.) On June 19, 2018, Defendant Ohm informed Plaintiff that her boss, Defendant Wadsworth, the Director of Defendant Holy Family Apartments, was not going to move Plaintiff until she was sixty-two (62) years old. (ECF No. 2- 2 at 3.) In August 2018, Plaintiff was offered a first-floor unit in her old building; she refused the apartment because Ms. Gardner, who purportedly assaulted her, still lived there. (ECF No. 2-2 at 3.) In April 2019, Plaintiff's neighbor was allegedly offered a first floor one-bedroom unit but informed Defendant Ohm that Plaintiff was "first on the list" for the unit, to which Defendant Ohm replied Plaintiff was ineligible because she was not yet sixty-two (62) years old. (ECF No. 2-2 at 3.) Plaintiff further claims another tenant, who was not disabled, was moved to a first-floor unit at the beginning of the summer of 2019. (ECF No. 2-2 at 3.)

As a result of these actions by Defendants Ohm, Wadsworth and Holy Family Apartments, Plaintiff alleged she suffered a broken foot, Post Traumatic Stress Syndrome, and has "had some issue with [her] eyes due to the stress of [Defendants'] abuse." (ECF No. 2-2 at 4.)

---

[2] The Complaint does not make clear whether this unit was a designated handicap unit, or whether it was a senior unit.

[3] The agreement actually provided that Plaintiff was to be moved "to a *handicap unit* should one become available in a building other than the one where the tenant was harassing and physical to [her]." (ECF No. 2-2 at 11) (emphasis added). The agreement *did not* state that Plaintiff would be moved whenever any first floor, one-bedroom apartment became available.

In addition to the foregoing, Plaintiff alleges she also had issues with her unit's heating system, as the furnace was "putting out 60% CO[2] according to Sarosky Heating and Air Conditioning[.]" (ECF No. 2-2 at 3.) Former Defendant Sarosky Heating & Air Conditioning told Plaintiff to keep her windows open to address the excess carbon monoxide, and to stop by their office for a copy of "the report." (ECF No. 2-2 at 3.) When she did so, Plaintiff was allegedly told her unit's furnace had the highest carbon monoxide output of any furnace at Defendant Holy Family Apartments. (ECF No. 2-2 at 3.) In October 2018, Defendant Wadsworth informed Plaintiff that Defendant Holy Family Apartments would not replace her furnace. (ECF No. 2-2 at 3.) As a result of the furnace producing excess carbon monoxide, Plaintiff claims she has experienced "an increase in respiratory issues over the last year." (ECF No. 2-2 at 4.)

Plaintiff further alleges she has been denied the use of a handicapped parking spot, as there is "[n]o disabled parking spot in front of [her] building." (ECF No. 2-2 at 4.) Plaintiff claims she has "to walk to the end of the building" where her assigned parking spot is, which is a non-disabled spot. (ECF No. 2-2 at 4.) Finally, Plaintiff claims she is hard of hearing and alleges that although Defendant Holy Family Apartments is aware of the fact that she cannot hear the doorbell, said Defendant has not fixed the doorbell. (ECF No. 2-2 at 4.)

In Plaintiff's subsequently filed "Motion for Leave to File Amended Complaint for Elder Abuse Against Holy Family Apartments, Diocese of Allentown, Randy Wadsworth, Karen Ohm, Sarosky Heating and Air Conditioning and HUD, Seeking Relief Exceeding 2,000,000.00" (ECF No. 28),[4] she accuses this Court of "deliberately denying [her] rights under the

---

[4] Plaintiff originally filed this exact document on May 29, 2020 (ECF No. 23) and it was denied on June 5, 2020 (ECF No. 24).

Constitution," along several other accusations. (ECF No. 28.) Plaintiff further alleges moving Defendants' failure to accommodate under the FHA (and presumably the ADA) without addressing the deficiencies of said claims (ECF No. 28 at 2) that were thoroughly discussed in this Court's Opinion dated April 29, 2020 (ECF No. 21).[5] Just as in her original Complaint (ECF No. 2), Plaintiff states in a conclusory fashion she was defamed by Defendant Holy Family Apartments. (ECF No. 28 at 3.) Plaintiff also claims again that her "Civil Rights were violated" in the context of the alleged assault by Holy Family resident "Ms. Gardner," and harassment and intimidation by an apartment manager who was allegedly walking near Plaintiff's car and staring at her. (ECF No. 28 at 3.) Plaintiff again raises an FHA age discrimination allegation, claiming she was denied accommodation for her disability because she had not yet attained the age of 62. (ECF No. 28 at 3.) The remainder of Plaintiff's submission consists of: a statement that this Court "ignored" her letter regarding retainment of counsel;[6] a statement on how COVID-19 has negatively affected the elderly population and how this Court contributed to the problem and "showed a blatant disregard for [Plaintiff's] health and well being [sic]"[7] by not giving Plaintiff

---

[5] In this filing, Plaintiff also complains she now suffers from "traumatic brain injury." (ECF Nos. 23, 28 at 3.)
[6] Plaintiff's statement is belied by reason of this Court's Order dated June 5, 2020 (ECF No. 24), in which Plaintiff was provided with ninety (90) days to secure counsel—per her request to do so. (ECF No. 24.)
[7] ECF Nos. 23, 28 at 4.

5

adequate time to file documents (ECF No. 28 at 4);[8,9] a statement on how the Diocese and Defendant Holy Family has "already been found guilty of sexual crimes" and covering up same (ECF No. 28 at 5); a statement pertaining to the fact that her insurance company and Medicare has been paying all the bills for injuries she allegedly sustained at the hands of Defendants (ECF No. 28 at 5); and, a statement regarding Plaintiff's suspicion that Defendant Holy Family is "attempting to not renew [her] lease[,]" thereby possibly attempting to make her homeless (ECF No. 28 at 5).

### b. Procedural History

On October 2, 2019, Plaintiff filed a Motion for Leave to Proceed *in Forma Pauperis* ("IFP") in the above-captioned matter ("4583 case"). (ECF No. 1.) Said Motion was granted on October 28, 2019, and her Complaint was filed, along with a timeline of events she titled as a "Motion." (ECF No. 2-2.) Summons' were returned executed on each Defendant except HUD,

---

[8] Again, this statement is belied by reason of: (1) this Court's Order dated April 16, 2020, in which the court granted Plaintiff an extension of her already extended time within which to properly serve Defendant HUD (ECF No. 20); (2) this Court's Order dated June 5, 2020, in which Plaintiff's request to secure counsel was granted and she was given ninety (90) days to do so (ECF No. 24); (3) this Court's Order dated June 5, 2020 (ECF No. 24) in which the court placed the matter in Suspense status; and, this Court's Order dated October 7, 2020 (ECF No. 26) in which Plaintiff was granted yet *another* opportunity to amend her Complaint and *another* thirty (30) days to do so. This Court further notes that: (1) **no one** knew how long the pandemic would last, therefore closures and restrictions continued to change on an "as needed" basis; and (2) court operations (including services provided by the Clerk's Office and the work normally performed by each judge's Chambers) remained ongoing throughout the pandemic. Plaintiff was free to contact the Clerk's Office regarding filings via telephone or written correspondence at any time.

[9] Plaintiff references the fact that she "was only given a 30 day [sic] continuance to serve the DOJ and US Attorney General with a Complaint and Summons for [her] case against HUD." (ECF Nos. 23, 28 at 4.) As a preliminary matter, this Court notes that the continuance Order referenced by Plaintiff was issued prior to the date upon which the courthouse physically closed due to the pandemic and when statewide closures did occur shortly thereafter, they were expected to be brief. This Court further notes Plaintiff was in fact given *another extension* of time to properly serve said Defendant. (ECF No. 20.)

6

and responses to the Complaint were due by February 7, 2020. (ECF Nos. 11, 12.) On February 7, 2020, all Defendants except HUD filed motions to dismiss. (ECF Nos. 10, 13.) Plaintiff sought default against HUD and her request was denied because she failed to properly serve said party in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. (ECF Nos. 16-18.) On March 16, 2020, this Court issued an Order providing Plaintiff with thirty (30) days to properly serve HUD. (ECF No 18.) Instead of doing so, on April 15, 2020, Plaintiff requested she be permitted additional time, due to the COVID-19 outbreak. (ECF No. 19.) Said request was granted on April 17, 2020, giving Plaintiff until May 15, 2020 to properly effectuate service upon Defendant HUD. (ECF No. 20.)[10]

With regard to the remaining defendants' motions to dismiss, this Court issued a Memorandum and Order on April 28, 2020, in which the court granted dismissal of various defendants and claims and directed Plaintiff to amend the remaining claims on or before May 29, 2020, in accordance with Rule 8 of the Federal Rules of Civil Procedure. (ECF No. 21 at 23-24; ECF No. 22.) Instead of doing so, on May 29, 2020, Plaintiff filed a "Motion for Leave to File Amended Complaint for Elder Abuse Against Holy Family Apartments, Diocese of Allentown, Randy Wadsworth, Karen Ohm, Sarosky Heating and Air Conditioning and HUD, Seeking Relief Exceeding 2,000,000,00." (ECF No. 23.) In her "Motion for Leave," Plaintiff continued to reference claims against Defendants Diocese of Allentown and Sarosky Heating & Air Conditioning, despite the fact that said parties were dismissed with prejudice on April 28, 2020. (ECF No. 22 ¶¶ 2-3.) Plaintiff's Motion for Leave also reiterated many of the facts set forth in her initial filing, in the same narrative fashion. Plaintiff further complained about how the

---

[10] As previously noted, at the time Plaintiff's request was made, the court was unaware of how long the pandemic would cause closures.

COVID-19 pandemic has resulted in elder abuse against her by both the court (in setting deadlines for filings) and by Defendant Holy Family Apartments (by "intimidation, harassment, pushing, hitting, shoving and beating"). (ECF No. 23 at 5.) Plaintiff likens this alleged "abuse" against her by Holy Family to that of a cover-up regarding offenses of "sexual crimes by the Grand Jury's report released in August 2018." (ECF No. 23 at 5.)

Upon review of Plaintiff's submission, this Court: denied her Motion for Leave to Amend *without prejudice*; provided her ninety (90) days to secure an attorney;[11] directed that on or before September 18, 2020, Plaintiff's newly retained counsel must either enter their appearance or Plaintiff shall inform the court as to her intention to proceed *pro se*; and, placed the matter in Suspense status. (ECF No. 24.) However, on September 22, 2020, Plaintiff commenced a new lawsuit against Defendant Holy Family Apartments. *See Coyne v. Holy Family Apartments*, 5:20-CV-4694-CDJ ("4694 case"). At the time Plaintiff filed this new Complaint, she neither paid the filing fee, nor requested *in forma pauperis* (IFP) status—despite the fact that by virtue of her IFP application in the instant matter ("4583 case"), she knew she must do one or the other. (ECF No. 1.) Further, Plaintiff's "Complaint" consisted solely of two letters she wrote to HUD and Holy Family Apartments, respectively. (ECF No. 1.)

Meanwhile, in the 4583 case, Plaintiff failed to timely comply with this Court's June 5, 2020 Order, prompting Defendants Holy Family Apartments, Karen Ohm and Randy Wadsworth to file a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41(b). (ECF No. 25.) However, this Court subsequently received a "Notice of Intention to Proceed Pro Se" from

---

[11] In her Motion, Plaintiff informed the court "[i]t was my intent to get a Civil Rights Attorney, however, I live in a red zone that is still currently under a stay-at-home order by Governor Wolf" and that "the Court has me breaking the rules of the red zone to meet their deadlines." (ECF No. 23 at 4.) This Court construed Plaintiff's written statements as a need for additional time to secure counsel.

Plaintiff via Certified United States Mail delivered to Chambers on September 24, 2020 (not served upon Defendants; docketed by the court at ECF No. 27).

On October 1, 2020, this Court issued an Order in the 4694 case, directing Plaintiff to either pay the filing fee, or properly seek IFP status within thirty (30) days. (ECF No. 3.) The Order also warned Plaintiff that failure to comply could result in dismissal of her case. (ECF No. 3.) A copy of the IFP application was mailed to Plaintiff by the Clerk of Court on October 2, 2020.

While Plaintiff's response to the Court's Order in the 4694 case remained pending, Defendants filed a motion for dismissal pursuant to Fed.R.Civ.P 41(b) in the 4583 case on September 28, 2020. (ECF No. 25.) In light of Plaintiff's Notice of Intent to Proceed *Pro Se*— again, untimely but excused due to *pro se* status—said Motion was denied without prejudice on October 7, 2020. (ECF No. 26 ¶ 2.) At that time, Plaintiff was also granted leave once again to properly "file an Amended Complaint in accordance with Paragraph 4 of this Court's Order dated April 28, 2020 (ECF No. 22), and incorporating the subject matter of her June 25, 2020 Motion for Leave to Amend." (ECF No. 26 ¶ 3.) Plaintiff was to do so no later than November 6, 2020. (ECF No. 26 ¶ 3.) The court further reminded Plaintiff that "[s]aid Complaint shall comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure." (ECF No. 26 ¶ 3.)

On October 7, 2020, Plaintiff filed a <u>duplicate copy</u> of her May 29, 2020 "Motion for Leave to File Amended Complaint for Edler Abuse Against Holy Family Apartments, Diocese of Allentown, Randy Wadsworth, Karen Ohm, Sarosky Heating and Air Conditioning and HUD,

9

Seeking Relief Exceeding 2,000,000.00." (ECF No. 28.)[12] Plaintiff has not filed anything further in this case since, thereby prompting moving Defendants to file the instant Motion to Dismiss Pursuant to Rule 41(b) (ECF No. 29).

Meanwhile, October 31, 2020 came and went without any word from Plaintiff in the 4694 case. On November 23, 2020, said case was dismissed. (ECF No. 4.) One day later, Plaintiff filed a "Motion Seeking Relief for Illegal Landlord Retaliation." (ECF No. 5.) On December 22, 2020, Plaintiff filed a Motion Opposing Dismissal of Case for Failure to Prosecute. (ECF No. 6.) Inasmuch as Plaintiff failed to comply with this Court's October 1, 2020 Order directing her to pay the filing fee or seek IFP status, and her opposition to dismissal does not speak to same, both motions shall be denied via separate Order.

### III. Standards of Review

#### a. Fed. R. Civ. P. 8

It is well settled that:

> Rule 8 requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). And ***"[t]he statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'"*** *Id.* (second alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

*Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 84 (3d Cir. 2020) (emphasis added).

---

[12] This Court recognizes the fact that Plaintiff's Motion was filed on the same day as the court's Order and as such, Plaintiff might not have seen the Order prior to filing her Motion for Leave to Amend. In any event, Plaintiff failed to subsequently file an Amended Complaint in compliance with the court's October 7, 2020 Order (ECF No. 26).

Under Federal Rule of Civil Procedure 8(a), "pleadings are to be liberally construed, and a pleading which gives notice to the defendant of the allegations made against him and the grounds upon which they are based is generally sufficient." *Binder v. WestStar Mortg., Inc.*, No. 14-7073, 2016 U.S. Dist. LEXIS 90620, at \*7 (E.D. Pa. July 13, 2016) (citations omitted). To that end, it is incumbent upon a plaintiff to plead with clarity. "Neither the Court nor the Defendants should be forced to speculate which events and theories of liability give rise to [a given count] . . . Certainly, neither the Court nor the Defendant should be required to sift through all of Plaintiff's previously stated allegations in order to piece together a claim." *Danielson v. Chester Twp.*, Civil Action No. 13-5427, 2013 U.S. Dist. LEXIS 164271, at \*24 (D. N.J. Nov. 19, 2013) (citing *Iqbal*, 556 U.S. at 678); *see also Glover v. FDIC,* 698 F.3d 139, 147 (3d Cir. 2012) ("Rule 8(a) requires that a complaint 'be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim.") (quoting *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)). Further, "there is no question that each count of a properly pled complaint must contain its own cause of action and those particular factual allegations that would allow the Court to draw the reasonable inference that the defendant is liable for that cause of action." *Danielson*, 2013 U.S. Dist. LEXIS 164271, at \*24.  Simply stated, "'Rule 8(a) requires parties to make their pleadings straight forward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" *Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 U.S. Dist. LEXIS 21499, at \*4-5 (E.D. Pa. Oct. 25, 2004) (quoting *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).  "A complaint may permissibly be dismissed based on Rule 8 noncompliance." *Kamdem-Ouaffo*, 810 F. App'x at 84 (citing *Salahuddin*, 861 F.2d at 42).

### b. Fed. R. Civ. P. 41(b)

Under Rule 41(b) of the Federal Rules of Civil Procedure, "[a] district court may dismiss an action sua sponte if a litigant fails to comply with a court order or prosecute his or her case." *Rawls v. Gibbs*, 741 F. App'x 108, 109 (3d Cir. 2018) (citing Fed. R. Civ. P. 41(b)). *See also Johnson v. Rite Aid (Derek Faight)*, CIV. ACTION NO. 17-862, 2018 U.S. Dist. LEXIS 171401, at *8 (W.D. Pa. Oct. 4, 2018) ("Rule 41(b) of the Federal Rules of Civil Procedure authorizes the court to dismiss a plaintiff's case for failure to prosecute."). "Because dismissal with prejudice under Rule 41(b) is a drastic sanction, the court must 'provide the plaintiff with an opportunity to explain [the] reasons for failing to prosecute the case or comply with its orders prior to dismissing a case sua sponte.'" *Id.* (quoting *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)).

The factors this Court must consider before dismissing Plaintiff's action *sua sponte* for lack of prosecution are as follows:

> 1) the extent of the nonmoving party's personal responsibility; 2) the prejudice to the moving party caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense.

*Clarke v. Richardson*, 153 F. App'x 69, 72 (3d Cir. 2005) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

"A court considering the *Poulis* factors should not consider any particular factor dispositive, but 'it is also true that not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution.'" *Sync Labs LLC v. Fusion-Mfg.*, 838 F. App'x 665, 670 (3d Cir. 2020) (quoting *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 132 (3d Cir. 2019)). "While consideration of the *Poulis* factors can help strike [the] balance [of weighing undue delays and

the orderly disposition of cases against disposition on the merits], '[n]o precise rule can be laid down as to what circumstances justify a dismissal for failure to prosecute, but the procedural history of each case must be examined in order to make that determination.'" *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) (quoting *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974)).

**IV.     Discussion**

Despite numerous opportunities to cure both procedural and substantive defects, Plaintiff has routinely failed to do so, in violation of Fed. R. Civ. P. 8. Moreover, Plaintiff's blatant disregard for this Court's Orders and her continued conduct of submitting documents to the court in any manner she pleases, make it impossible for both this Court and the remaining defendants to properly proceed with the case—again, in violation of Fed. R. Civ. P. 8.

With regard to the Rule 41(b) Motion to Dismiss in this case, the same was served upon Plaintiff via First Class Mail and electronically, on November 13, 2020 (ECF No. 29-3). As such, Plaintiff was properly given notice of the fact that her case could be dismissed with prejudice. Pursuant to the Local Rules of Civil Procedure for this District, Plaintiff had fourteen (14) days to respond.[13] Plaintiff chose not to do so.

---

[13] Local Rule 7.1 provides in pertinent part:
> Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion. Unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, ***within fourteen (14) days*** after service of the motion and supporting brief. ***In the absence of timely response, the motion may be granted as uncontested*** except as provided under Fed.R.Civ.P 56.

E.D. Pa. Local Civil R.7.1(c) (emphasis added).

This Court's awareness of the measure of leniency to be afforded *pro se* plaintiffs is clearly evidenced by the foregoing procedural history. Despite numerous accommodations, Plaintiff has repeatedly failed to comply with court Orders and has delayed the litigation process. *See Karakozova v. Univ. of Pittsburgh,* No. 09-0458, 2010 U.S. Dist. LEXIS 100670, at *11 (W.D. Pa. Sept. 24, 2010) ("[C]ourts should not allow pro se litigants to disregard court orders and perpetually delay trial proceedings.").

Turning now to the *Poulis* factors, as a *pro se* litigant, personal responsibility must be attributed to Plaintiff. *See Clarke*, 153 F. App'x at 73 (*pro se* plaintiff is directly responsible for his/her conduct). Although Plaintiff filed miscellaneous documents after several court Orders were issued, said documents were untimely and not responsive to the Orders. As to the second consideration, Defendants have already been prejudiced by Plaintiff's conduct, as they have had to incur the expense of securing counsel to prepare and file multiple Motions to Dismiss and respond to letters/submissions by Plaintiff. With respect to Plaintiff's history of dilatoriness, the same has been thoroughly addressed hereinabove and speaks for itself. As to whether or not Plaintiff's conduct was willful or in bad faith, it has been held that "[w]illfulness involves intentional or self-serving behavior." *Parks v. Ingersoll-Rand Co.*, 380 F. App'x 190, 195 (3d Cir. 2010). Clearly, every action Plaintiff has taken since filing her initial IFP application in the 4583 case on October 2, 2019, has been self-serving. Next, this Court has considered the possibility of alternative sanctions. However, in light of: Plaintiff's financial status; Plaintiff's continued failure to effectively cure defects throughout the litigation process; and, Plaintiff's outright disregard for the court's directives, the only appropriate sanction is dismissal. *See Black v. Pa. Bd. of Prob. & Parole,* 717 F. App'x 103, 105 (3d Cir. 2017) ("[O]ther sanctions were not available because the matter could not proceed without an adequate amended complaint.").

Lastly, this Court fully assessed the merits of Plaintiff's initial Complaint on April 28, 2020 (ECF No. 21) and relies upon that assessment for purposes of the instant Motion. With total disregard for the Court's Order to amend said Complaint,[14] Plaintiff has failed to properly raise her remaining claims.

Whether viewed in the context of Plaintiff's original Complaint or her duplicative "Motion for Leave to File Amended Complaint for Elder Abuse Against Holy Family Apartments, Diocese of Allentown, Randy Wadsworth, Karen Ohm, Sarosky Heating and Air Conditioning and HUD, Seeking Relief Exceeding 2,000,000.00" (ECF Nos. 23, 28), Plaintiff has completely failed to plead the elements required for her federal claims but instead, presents a narrative of the past three years of her life and attaches copies of all of her complaints to HUD, Holy Family Apartments, Pennsylvania Senator Casey, and the Disability Rights of Pennsylvania organization. *See Alja-Iz v. U.S. V.I. Dept. of Educ.,* 626 F. App'x. 44, 46 (3d Cir. 2015) (notwithstanding the court's duty to liberally construe a *pro se* Complaint, the Complaint must still satisfy the plausibility standard derived from *Twombly* and *Iqbal*) (citing *Fantone v. Latini*, 780 F.3d at 193); *Sanou v. Etemad,* Civil Action No. 05-3871, 2005 U.S. Dist. LEXIS 22390, at *4 (E.D. Pa. Oct. 3, 2005) (noting the court "must only accept as true all well-pled allegations" and finding "[e]ven with the deference due pro se plaintiffs, this Court finds no well-pled violation of the Sherman Act in the incoherent rant in the complaint.") (internal citation omitted).[15]

---

[14] Plaintiff was initially granted leave to file an Amended Complaint on October 29, 2019, and then again on April 28, 2020, June 5, 2020, and October 7, 2020.

[15] Absent any indication that Plaintiff's federal claims could survive on amendment, this Court would not exercise supplemental jurisdiction over her similarly deficient state law claims for physical and mental injuries, or defamation. *See* 28 U.S.C. §1367(c) (district court may decline to exercise supplemental jurisdiction over state law claims when the claims over which it had original jurisdiction have been dismissed).

As discussed above, "'[t]he authority of a court to dismiss for lack of prosecution' is governed by the need for 'courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Parks*, 380 F. App'x at 195 (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 631(1962)). Otherwise stated,

> The United States Supreme Court has held that "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statue but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 631, 82 S. Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). "Such a dismissal is deemed to be an adjudication on the merits, barring any further action between the parties." *Iseley v. Bitner*, 216 F. App'x 252, 255 (3d Cir. 2007)

*Mitchell v. Mallick*, CIVIL NO. 3:CV-15-1958, 2017 U.S. Dist. LEXIS 7319, at *2-3 (W.D. Pa. Jan. 19, 2017).

Because Plaintiff has made it impossible for the court to "achieve the orderly and expeditious disposition of [this case,]" Defendants Holy Family Apartments, Karen Ohm, and Randy Wadsworth's Rule 41(b) Motion to Dismiss (ECF No. 29) shall be granted. *See Brown v. United States,* 823 F. App'x 97, 103 (3d Cir. 2020) (district court's dismissal pursuant to Fed. R. Civ. P. 41(b) was not an abuse of discretion in a case where "[the plaintiff] was personally responsible for her litigation while proceeding pro se, that alternative sanctions would not be helpful given her unwillingness to abide by court orders, her behavior could not be characterized as 'inadvertent or negligent' and was instead 'intentional or self-serving.'") (quoting *Briscoe v. Klaus*, 538 F.3d 252, 257 (3d Cir. 2008)). This Court has thoroughly considered all of the *Poulis* factors and finds that when assessed in conjunction with one another, they weigh heavily in favor of dismissal. *See Hildebrand v. Allegheny Cty.,* 923 F.3d 128, 132 (3d Cir. 2019) ("None of the *Poulis* factors is alone dispositive, and it is also true that not all of the factors need to be satisfied

to justify dismissal of a complaint for lack of prosecution. Dismissal is a sanction rightfully in the district courts' toolbox[.]") (citations omitted).

## V. Conclusion

For the reasons set forth above, Plaintiff's most recent Motion for Leave to Amend shall be denied and Defendants Holy Family Apartments, Karen Ohm and Randy Wadsworth's Motion to Dismiss pursuant to Rule 41(b) shall be granted.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.